ANTHONY MARTIN
Attorney for the United States
Acting Under Authority Conferred by 28 U.S.C. § 515
District of Arizona
LISA E. JENNIS
Assistant U.S. Attorney
Two Renaissance Square
40 N. Central Ave., Suite 1800
Phoenix, Arizona 85004
Telephone: 602-514-7500
Email: lisa.jennis@usdoj.gov

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br><br>             Plaintiff,<br><br>   vs.<br><br>Chauncey Hollingberry,<br><br>             Defendant. | Case No. 20-3058MJ-001-PHX-MTM<br><br>**GOVERNMENT'S DETENTION MEMORANDUM** |

The United States of America, by and through Lisa E. Jennis, Assistant United States Attorney, submits this memorandum in support of the government's motion for detention as to defendant Chauncey Hollingberry. The detention hearing for this defendant is scheduled for Friday, March 20, 2020.

The United States asserts that defendant is charged with a crime of violence and that he poses a serious risk of nonappearance for future proceedings, and there is a serious risk that he will obstruct and attempt to obstruct justice, and intimidate prospective witnesses. 18 U.S.C. § 3142(f)(1), (f)(2).

On March 13, 2020, defendant was arrested by the Phoenix Police Department for Aggravated Assault with a deadly weapon/dangerous instrument pursuant to 13-1204(a)(2) after striking a Department of Economic Security (DES) security officer with his cellular telephone which was in a hard case (weighing .586 pounds) attached to a tripod which was approximately five feet long (weighing 4.193 pounds). The defendant used both hands to swing the tripod with cellular phone and struck the security guard on the left side of his face causing a mark and scratch from his ear to his eye. Subsequent to that arrest, defendant

was arrested by the Federal Bureau of Investigation pursuant to an arrest warrant out of this district charging defendant with Cyberstalking in violation of Title 18, United States Code, Section 2261A(2). Defendant had his initial appearance before this court on March 16, 2020. (CR 7.)

## **ARGUMENT**

### I.  Legal Framework

Under the rubric of the Bail Reform Act, the Court shall hold a detention hearing in a case that involves a "crime of violence" or other enumerated offenses, 18 U.S.C. § 3142(f)(1)(A), or if there is a serious risk that the defendant will flee, obstruct or attempt to obstruct justice, or threaten, injure, or intimidate, or attempt to threaten, injure or intimidate, a prospective witness or juror, 18 U.S.C. § 3142(f)(2). If, following a hearing, "the judicial officer finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community," then the judicial officer must order the defendant detained pending trial. 18 U.S.C. § 3142(e). In making its determination, the Court must take into account the available information concerning (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) the history and characteristics of the defendant, including (a) the defendant's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearances at court proceedings, and (b) whether, at the time of the current offense or arrest, the defendant was on probation, parole, or other pretrial release; and (4) the nature and seriousness of the danger to the community that would be posed by the defendant's release. 18 U.S.C. § 3142(g).

A finding that no condition or combination of conditions will reasonably assure the safety of the community must be supported by clear and convincing evidence. 18 U.S.C. § 3142(f).

A finding that no condition or combination of conditions will reasonably assure the defendant's appearance, however, must only be established by a preponderance of the evidence. *United States v. Gebro*, 948 F.2d 1118, 1121 (9th Cir. 1991).

## II.   Cyberstalking is a Crime of Violence

A "crime of violence" under the Bail Reform Act includes "an offense that has as an element of the offense the use, attempted use, or threatened use of physical force against the person or property of another," 18 U.S.C. § 3156(a)(4)(A), and "any other offense that is a felony and that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense," 18 U.S.C. § 3156(a)(4)(B). The latter definition, sometimes referred to as the "residual clause," is "intended to cast a wider net, specifying that it relates to any other offense that does not necessarily involve violence but by its nature involves a substantial risk that physical force may be used in committing the offense." *United States v. Flores-Ortiz*, Crim. No. 15-605 (PAD), 2015 WL 7574765, at *3 n.2 (D.P.R. Nov. 25, 2015) (citing *United States v. Dillard*, 214 F.3d 88, 92 (2d Cir. 2000)).

To determine whether a particular offense is a crime of violence, courts in the Ninth Circuit employ the categorical approach. *See*, *e.g.*, *United States v. Montoya*, 486 F. Supp. 2d 996, 1002 (D. Ariz. 2007). Under the categorical approach, courts do not evaluate facts specific to the case, nor do they inquire "whether the statutory elements of a crime require (or entail) the creation of such a risk in each case that the crime covers." *Sessions v. Dimaya*, 138 S. Ct. 1204, 1211 (2018). Rather, the Court inquires whether the "ordinary case" of an offense presents a substantial risk that physical force against the person or property of another will be used in the course of committing the offense. *Id*.

While the Ninth Circuit has not yet considered the issue, courts across the country have consistently found cyberstalking to be a crime of violence under the Bail Reform Act. *See United States v. Kukstis*, No. 4:18-mj-04174-DHH (D. Mass. May 04, 2018) (Memorandum and Order on Detention); *United States v. Harrison*, 354 F. Supp. 3d 270, 278 (W.D.N.Y. 2018); *United States v. Grooms*, 3:15-mj-00025, 2015 WL 1982097, at *5

(S.D. W. Va. Apr. 29, 2015); *United States v. Shrader*, No. 1:09-cr-00270, 2010 WL 503092, at *3 (S.D. W. Va. Feb. 8, 2010); *United States v. Neuzil*, No. 09-CR-2020-LRR, 2009 WL 2030373 (N.D. Iowa July 13, 2009).

The rationale behind these decisions is strong. For one, the cyberstalking statute punishes stalking with "the intent to kill, injure, harass, or intimidate," the ordinary case of which naturally involves a substantial risk of physical force. *Kukstis*, No. 4:18-mj-04174-DHH at 10 ("Conduct intended to 'kill, injure, harass, or intimidate' another implicates categorically a substantial risk of the use of physical force during the course of stalking."); *Harrison*, 354 F. Supp. 3d at 278 ("Cyberstalking . . . categorically involves a substantial risk that physical force against the person or property of another may be used"); *Grooms*, 2015 WL 1982097, at *3 (agreeing that intent to "'kill, injure, harass . . . or cause substantial emotional distress,' . . . naturally involved a substantial risk of physical force); *Shrader*, 2010 WL 503092, at *3 (same). The Court in *Kukstis*, relying on the dissent in *Malta-Espinoza v. Gonzalez*, 478 F.3d 1080, 1086 (9th Cir. 2007), also found persuasive research conducted by the National Center for Victims of Crime and the United States Department of Justice. Specifically, this research shows that 46% of stalking victims experience one or more violent incidents by the stalker, approximately 29% of stalkers vandalize the victim's property, and 9% of stalkers kill or threaten to kill the family's pets. Indeed, "because stalking, by definition, requires *repeated* victimization, it is intuitive that there is an increased opportunity for violence." *Malta-Espinoza*, 478 F.3d at 1087 (Duffy, J., dissenting) (emphasis added). *See also* 18 U.S.C. § 2261A(2) (requiring a "course of conduct" rather than a single, isolated event).

The conclusions of these courts are further underpinned by Congress' intent in enacting the cyberstalking statute. As *Grooms* acknowledged, the statute was enacted as part of the Violence Against Women Reauthorization Act of 2005. *Grooms*, 2015 WL 1982097, at *5. Citing "the sobering statistic" that nearly one-third of American women report enduring physical or sexual abuse, "the act implicitly recognizes that stalking and cyberstalking are crimes of violence, like sexual assault, domestic battery, and dating

violence, which require the appropriation of funds for the creation of hotlines, education, training, prosecution, and punishment." *Id*. *Grooms* reasoned that, against this legislative backdrop, it would be "illogical and counterintuitive" for a court to not consider whether an alleged offender poses a danger to victims and the community. *Id*. Together, these decisions stand for the consistent understanding that cyberstalking by its nature involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense, and therefore is a crime of violence under the Bail Reform Act.

### III.  No Conditions Will Reasonably Assure the Safety of the Victim and Others.

Defendant acted in retaliation against Victim K for having videos with her image or information removed from his YouTube Channel, Law Offices of Daddy and Master aka Chauncey Dragonfyre. YouTube removed a video from a July 2018 interaction at the Arizona Attorney General's Office (AGO) where Phoenix Police Department (PPD) responded to the scene and charged defendant with trespassing.[1] PPD spoke with Victim K in her work capacity, and she later filed a privacy complaint after the defendant posted the PPD Officer's bodycam video on his YouTube channel. Thereafter, for approximately 14 months, defendant called and visited the AGO complaining about AGO employees getting privacy complaints against him and the AGO's no-filming policy. In January 2020, defendant's harassing conduct against Victim K escalated. In January 2020, he filmed himself threatening to file a complaint against Victim K, calling her a "bitch" on the video. He asked the viewers watching his YouTube videos to send him Victim K's home address, phone numbers, pictures and any "dirt" that they have on her or other AGO employees. Defendant told Victim K's co-workers to blame her for his actions. In response to the video, viewers of defendant's YouTube channel wrote derogatory posts threatening physical harm and even death. They posted her address, the value of her home, and other personal information. All the while, defendant kept returning to the AGO and filming

---

[1] Trepassing charges were later dismissed.

- 5 -

Victim K's office requiring her to have security escort her to and from work. Defendant has repeatedly publicized the victim's personal information and has routinely referred to her in a derogatory fashion.

Victim K isn't the only one defendant has victimized. The United States submitted six letters to the court which describe the defendant's history of stalking and terrorizing members of this community. These victims describe in detail the fear, emotional distress and anxiety caused by the defendant, and they all request that he be detained. Two of those victims, in addition to Victim K, have current Injunctions against Harassment against the defendant.

On January 24, 2020, Defendant was served with an Injunction Against Workplace Harassment to stop his harassment of Victim K. He ignored it and the same day sent out a mass email to Victim K's co-workers and compiled an email list of 56 government workers, including Victim K, directing his followers to email bomb the people on the list. This list was available to all viewers.

There are two other Injunctions Against Harassment out of Superior Court of Arizona against the defendant. One of them was filed by the defendant's uncle on December 3, 2019 and served on the defendant on December 17, 2019, in response to the defendant sending defamatory emails to the uncle's donors which contained false and disturbing accusations. In addition, in October 2019, the defendant's uncle discovered that the defendant created a website mimicking the uncle's non-profit website but used .net in place of .org. Defendant also ignored that court order and continued to talk about his uncle in disparaging ways on video and on March 7, 2020, sent an email to his uncle's counsel, in which he says he is "doing everything I can to cause your client to physically die." Defendant mentioned several times in videos that he had level 5 body armor and was going to the gun range. And defendant took a poll on YouTube on whether he should go to "a synagogue on the public sidewalk with body armour, an AR-15 assault rifle and a

camera?"[2] The second was filed by a news reporter who the defendant also harassed and posted video about on his YouTube channel. He was served with the court order on May 2, 2019.

In addition to harassing individuals, the defendant frequently goes to state and federal buildings to film employees and members of the public visiting those locations. He films at public schools, churches and synagogues. He attempts to incite people by carrying "fuck Jesus" signs outside of churches and goes to synagogue pretending not to speak English and stating "Allah Akbar" which means "God is Greater", an Islamic declaration of faith used in the opening declaration of every Islamic prayer. This phrase has also been used as a "battle cry" in various religious and military conflicts and when committing acts of terrorism or religious or political violence. These videos were posted on his YouTube channel.

The nature and circumstances of the offense support detention. The offense with which the defendant is charged is a serious crime of violence that involved conduct intended to harass and intimidate the victim and cause reasonable fear of serious bodily injury to the victim and her family. By spreading disparaging information about the victim, to the public and to her co-workers, defendant turned the internet into a weapon of terror. The victim received threats to harm her and her family members from unknown persons some of whom appear to subscribe to defendant's YouTube channel. These threats cannot be dismissed as idle. Rather, the defendant intended to incite hate and/or violence against the victim and her family, and his actions proved successful.

Defendant is also a danger to his mother and he has access to all her money. Defendant's mother, age 59, was interviewed by law enforcement on March 13, 2020, after the defendant's arrest. She lives with the defendant and stated that she hasn't left the home since they moved there approximately two years ago. She stated that the defendant told

---

[2] A search warrant was executed at defendant's home and on his vehicle and no firearms or body armor was located.

her that if she left the apartment, the home would be raided by government freeloaders and criminals that were always watching the apartment and waiting for her to leave. Defendant resides in the master bedroom and his mother sleeps on a large beanbag in the other bedroom. She told law enforcement that she used to enjoy a life of hiking and biking but is now afraid to leave her home. She stated that defendant controls all her finances and her inheritance checks. During an interview with FBI, defendant told them that his mother signs her monthly checks from a trust for which she is the beneficiary. A review of those checks shows that they are mailed to defendant's Post Office Box and are signed over to the defendant. Defendant also told the agents he does not have a power of attorney but that is untrue. Defendant has had power of attorney for his mother since July 2013, as it is an exhibit to a civil complaint for Libel filed December 5, 2019, in Superior Court of California, County of Santa Barbara against the defendant by his uncle.

What makes this history of animosity particularly troubling and relevant for purposes of detention is his ready, apparent, and already-demonstrated capability to incite violence toward the victim and her family. Defendant's actions demonstrate that he is becoming more and more dangerous. He has become physically violent with a security guard. He continues to harass and torment the victims despite receiving court orders to the contrary.

Applying the factors set forth in 18 U.S.C. § 3142(g), there is ample evidence to support a finding that no conditions of release will reasonably assure the safety of the victim, her immediate family members, and others. Nor are there any conditions that negate the risk that the defendant will obstruct or attempt to obstruct justice.

For these reasons, the nature and seriousness of the danger to Victim K cannot be understated. This danger is multi-faceted, posing both a significant risk to Victim K's emotional and mental well-being as well as a danger to Victim K and her family's physical safety. The defendant's crime was, in essence, cyber-facilitated violence, and support detention.

The weight of the evidence against the defendant is similarly strong. As detailed in the complaint, the communications toward or about Victim K speak for themselves in terms of the express and implied threats and cyberstalking behavior contained within them. The government's evidence consists of YouTube videos, social media posts, emails, and voice messages involving the defendant's cyberstalking conduct. These communications prove not only the defendant's direct dissemination of compromising material about Victim K to members of the public and her work community, but also show the defendant actively plotting his campaign to engage in cyberstalking and recruiting his viewers to assist him.

Defendant's conduct of sending derogatory information out via YouTube, FaceBook and emails clearly evince the defendant' objective to harass, intimidate, shame, embarrass, humiliate and otherwise, ruin Victim K's life[3], as well as place a high risk of harm to her and her family members.

In determining the defendant's capacity to obstruct justice and violate court orders, his conduct and behavior preceding and while facing Injunctions Against Harassment is informative. On February 20, 2020, Victim K obtained an Injunction Against Harassment against Defendant. After being served with the court's order, defendant attempted to avoid service by running to his car, and he even lied about it to his viewers claiming he never read it.

When defendant was interviewed after his arrest, he stated that he would never stop posting public information on the internet. He stated that as long as he didn't make a "true threat" that he couldn't be prosecuted. He admitted that he didn't care how it made people feel as he couldn't control their feelings. He stated that as long as a government employee was going to infringe on his rights that he would continue to do what he is doing. He stated that "either you have a free country or you don't, and you can publish public information about someone, and you can talk about someone on the internet, period. If you can't do

---

[3] The defendant has committed similar conduct against his uncle with the goal of ruining his life and reputation.

- 9 -

that, you don't have a free country, what can you talk about on the internet?  And I understand the government doesn't like it but that's nice."

The United States has satisfied its burden of establishing by clear and convincing evidence as to the defendant that there are no conditions of combination of conditions that can reasonably assure the safety of the community if he is released.

**IV.     No Conditions Will Reasonably Assure the Appearance of the Defendant at Future Court Proceedings.**

The defendant's history and characteristics support detention and demonstrate that there are no conditions or combination of conditions that can assure his appearance at future court proceedings.

He has repeatedly demonstrated that he won't follow the rules.  He continues to film inside government buildings even though he is told her cannot do so.  He also ignores the court orders filed to prevent him from harassing others, specifically Victim K and his uncle.  This gives this court little reason to believe that he would follow any release conditions imposed. Further, he is no longer employed and should not be allowed to reside with his mother based on her statements to law enforcement.  With nowhere to live, no employment, and practically no reason to believe that he will abide by release conditions, the government submits that it has established, by a preponderance of the evidence, that there are no conditions or combination of conditions that can assure his appearance at future court proceedings.

/ / /

/ / /

/ / /

**CONCLUSION**

Accordingly, the United States respectfully requests this Court to find that, in light of the factors set forth in 18 U.S.C. § 3142(g), the defendant should be detained pending trial and enter an Order of Detention accordingly.

Respectfully submitted this 19th day of March, 2020.

ANTHONY MARTIN
Attorney for the United States
Acting Under Authority Conferred by 28 U.S.C. § 515
District of Arizona

*/s/ Lisa E. Jennis*
LISA E. JENNIS
Assistant U.S. Attorney

Certificate of Service

I hereby certify that on this day, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the CM/ECF registrant in this case.